# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

| | |
|---|---|
| CHRIS MALONE,<br><br>                          Plaintiff,<br><br>v.<br><br>STEVEN ANGLE, in his individual and official capacity as Chancellor at the University of Tennessee-Chattanooga; MARK WHARTON, in his individual and official capacity as Vice-Chancellor and Athletic Director at the University of Tennessee–Chattanooga; and RUSTY WRIGHT, in his individual and official capacity as Head Football Coach at the University of Tennessee–Chattanooga,<br><br>                          Defendants. | COMPLAINT<br><br>Case No. |

"Above all else, the First Amendment means that government has no power to restrict expression because of its message… "

                          **Justice Thurgood Marshall**

"If you don't believe in free speech for people you disagree with…, then you don't believe in free speech."

                          **Ricky Gervais**

## INTRODUCTION

1.     Chris Malone ("Malone") is suing Steven Angle, Mark Wharton, and Rusty Wright ("Defendants" unless identified separately) pursuant to 42 USC § 1983. Defendants are employees

and/or officials at the University of Tennessee-Chattanooga ("UTC"), a public school in Tennessee. Defendants retaliated against Malone for exercising his First Amendment rights. Specifically, they terminated Malone for a tweet in which he criticized and made a fat joke about Stacey Abrams, a nationally-known politician. Malone tweeted as a private citizen - on his personal time, at his personal residence, and from his personal Twitter account. Malone tweeted about a matter of public concern - the Georgia Senate run-off on 1/5/2021 and Stacey Abrams. Malone seeks nominal damages; compensatory damages; reinstatement with backpay; punitive damages; declaratory relief; and attorney fees, expenses and costs pursuant to 42 USC § 1988.

## II.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to hear and decide all issues presented in this case pursuant to 28 USC §§ 1331, 1343, and 1367, this case being predicated upon a federal question and the enforcement of certain federal constitutionally protected rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

3. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 USC §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 USC § 1491(b), as Malone resided at all times relevant and Defendants reside within this federal district. Moreover, Defendants' wrongful conduct took place within this federal district.

## III.

## PARTIES

### *PLAINTIFF*

5. Malone is an adult citizen and resided at all times relevant in Chattanooga, Hamilton County, Tennessee and is a former employee of UTC.

### *DEFENDANTS*

6. Defendant Angle ("Chancellor Angle") is an adult citizen and resides in Chattanooga, Hamilton County, Tennessee and is Chancellor at UTC. At all times relevant, Chancellor Angle acted under color of state law and is sued in his individual and official capacities.

7. Defendant Wharton ("AD Wharton") is an adult citizen and resides in Chattanooga, Hamilton County, Tennessee and is Vice-Chancellor at UTC. At all times relevant, AD Wharton acted under color of state law and is sued in his individual and official capacities.

8. Defendant Wright ("Coach Wright") is an adult citizen and resides in Chattanooga, Hamilton County, Tennessee and is Head Football Coach at UTC. At all times relevant, Coach Wright acted under color of state law and is sued in his individual and official capacities.

## IV.

## FACTS

9. Malone has been a college football coach for approximately twenty (20) years.

10. Malone has coached at U-Mass, VMI, James Madison University, Old Dominion University, and UTC. In addition, Malone has coached at Virginia State University, an HBCU (Historically Black Colleges & Universities) institution.

11. On January 5, 2021, Malone was employed as an offensive line coach at UTC.

12. Throughout his employment at UTC, Malone consistently performed his duties to the satisfaction of his employer, and prior to his termination and the events that give rise to this Complaint, he had never been subjected to any disciplinary action of any type.

13. On the evening of January 5, 2021, Malone was watching the returns for the Georgia Senate run-off races. The run-off races were between two (2) Republicans and two (2) Democrats, and they were hotly-contested races that drew intense national attention. The two (2) Democrats were supported by Stacey Abrams, a nationally-known politician who ran for Governor of Georgia in 2018.

14. As Malone watched the returns late that evening, it became apparent that the two (2) Democrats would likely win their respective run-off races. Malone had seen certain things that concerned him and caused him to believe Stacey Abrams and the Georgia Democrats had cheated.

15. At approximately 11:35 p.m., Malone tweeted the following ("the tweet"): "Congratulations to the state GA and Fat Albert @staceyabrams because you have truly shown America the true works of cheating in an election, again!!! Enjoy the buffet Big Girl! You earned it!!! Hope the money was good, still not governor!"

16. The tweet represented Malone's personal sentiments.

17. The tweet was made on Malone's personal time.

18. The tweet was made from Malone's personal residence.

19. The tweet was made from Malone's personal Twitter account.

20. Malone's Twitter account does not identify him as an employee of - much less a spokesman for - UTC.

21. Shortly thereafter, three (3) former players responded negatively to the tweet, and Malone deleted it and went to bed. The tweet was up for approximately thirty (30) minutes.

22. Someone screenshot the tweet. Apparently, this person is humorless, hypersensitive, and vindictive. This person was also emboldened by the "search and destroy" atmosphere that currently prevails in our culture, and he believed that Malone should lose a twenty (20) year career because of a tweet that was up for thirty (30) minutes. The screenshot was subsequently published and used to pressure Defendants to terminate Malone's employment.

23. The next morning, January 6, 2021, Malone went to his office at UTC. During the day Malone saw Coach Wright, who did not mention the tweet and certainly did not tell him it was "unacceptable" or that he had violated any "clear set of standards". Likewise, Malone saw AD Wharton, who did not mention the tweet and certainly did not tell him he had posted something "totally inappropriate" or "appalling."

24. At approximately 4:30 p.m. that afternoon, Malone received a telephone call from Coach Wright. Coach Wright asked Malone about the tweet for the first time and indicated he thought it was funny, but he confirmed that Malone had deleted the tweet.

25. At approximately 7:30 p.m. that evening, Malone received a second telephone call from Coach Wright. Coach Wright told Malone he didn't know what was going to happen to Malone's job and that "this" had gone over his head.

26. At approximately midnight, Malone received a third call from Coach Wright. Coach Wright said he was trying to get Malone suspended with pay but wasn't sure that would happen.

27. Early the next morning, January 7, 2021, Malone received a fourth telephone call from Coach Wright. This call occurred at approximately 7:00 a.m. Coach Wright told Malone he would be fired if he didn't resign immediately. Malone asked Coach Wright if he wanted him to hand-deliver the resignation. Coach Wright told him not to come to campus but rather to e-mail the resignation to him. Malone e-mailed the resignation.

28. Malone was forced to resign because of the tweet.

29. Legally, forced resignation is termination.

30. All Defendants were involved in the decision to terminate or the process of terminating Malone's employment at UTC.

31. Defendants quickly published statements on the UTC website. In their statements, Defendants went out of their way to condemn Malone and distance themselves from him. Chancellor Angle stated that the tweet was "hateful, hurtful and untrue" and that it constituted "discrimination and hatred." AD Wharton stated that the tweet was "totally inappropriate" and "appalling" and "that individual is no longer a part of the program." Coach Wright stated that the tweet was "unacceptable", that it violated a "clear set of standards", and "that individual is no longer a part of my staff."

32. On January 7 and 8, 2021, Malone's name and reputation were dragged along the information superhighway. Specifically, the "Chris Malone is evil and racist" story was published nationally by on-line news media, from ESPN to Sports Illustrated to the Washington Post to the New York Times.

33. Malone is not evil or racist; he has never been labeled a racist before the tweet.

34. Malone criticized and made a fat joke about Stacey Abrams, a nationally-known politician.

35. Long before Stacey Abrams entered the national stage, politicians were routinely criticized by each other, the media, and the public for being liars and cheaters[1]. More to the point, politicians have been routinely criticized for cheating in elections[2] As a matter of fact, even Stacey Abrams has claimed the 2018 Georgia gubernatorial election, which Malone referenced in the tweet, was "stolen from Georgians." [3]

36. Long before Stacey Abrams entered the national stage, politicians were mocked by each other, the media, and the public for being fat, starting with President William Howard Taft, who reportedly weighed as much as 340 pounds and got stuck in the White House bathtub.





---

[1] *"Of course Presidents Lie"* CNN Politics, 11/24/13. *"Are Clinton and Trump the Biggest Liars to run for President?"* Politico July-August 2016. *"Lies, Damned Lies, and the Truth about Joe Biden"* The Hill. 5/22/20;"Donald Trump's Re-election Playbook: 25 Ways He'll, Lie, Cheat, and Abuse His Power" The Guardian 6/28/20; *"Trump's base loved that he was a liar and a cheat"* Salon 8/4/20.

[2] *"The History of Stealing Elections"* Saturday Evening Post 11/18/19; *"Trump is Going to Cheat"* The Atlantic, 2/18/20; *"Trump Administration's Agenda: To Lie, Cheat, or Steal 2020 Election"* The Atlanta Voice 9/15/20; *"Bitter Donald Trump A Liar and Cheat to the End"* Mirror 11/4/20; *"Trump is Going Out the Way He Came In: A Loser, a Liar, and a Cheat"* Salon 11/14/20.

[3] Stacey Abrams, Democrat Response to State of the Union Address 2/5/19; *"Stacey Abrams' False Claims About Election Integrity"* The Heritage Foundation 2/11/19; *"The Stacey Abrams Play Book for Crying 'Stolen Election'"* National Review 4/23/21.

More recent examples include Bill Clinton, Chris Christie and Donald Trump[4.] (Of course, Donald Trump was also mocked for orange skin and a bad comb over.) To be clear, though, no one has been mocked for being fat more than Chris Christie.





Time Magazine's 2013 cover story on Chris Christie.

But fat politicians haven't merely been mocked. Mainstream publications have questioned their electability and even their character[5].

37. Bottom line. Malone tweeted as a private citizen about a matter of public concern. Malone did not need Defendants' permission or approval to do so, especially on his personal time, from his personal residence, and from his personal Twitter account. And Defendants terminated him in violation of the First Amendment.

---

[4] *"Bill Clinton Lightens Up"* Washington Post 8/6/97. *"Look, I'm sorry, but New Jersey Governor Chris Christie cannot be president. He is just too fat."* Michael Kinsley in Bloomberg Opinion 9/29/11; *"Would We Call Chris Christie Fat So Often if He Were a Woman?"* The Atlantic 2/8/13. *"Experts: Chris Christie's dropped 85 pounds"* Politico 6/2/14; *"Nancy Pelosi accused of fat-shaming 'obese' Trump"* BBC News 5/20/20; *"[Trump's] a big fat loser, alright. This guy hasn't seen his d**k since 1988, he's so fat."* Democratic Strategist James Carville 5/21/20.

[5] *"Pelosi calls Trump 'morbidly obese': Voters Don't Like Overweight Candidates".* Washington Post 6/5/20; *"Are Overweight Politicians Less Trustworthy?"* The Economist 7/30/20.

# VI.

# CAUSES OF ACTION

## COUNT I

## 42 USC § 1983
## VIOLATION OF THE FIRST AMENDMENT

### (Retaliation)

38. Malone incorporates by reference herein, as fully as though set forth verbatim, the allegations set forth in the preceding numbered paragraphs, and he does further allege as follows.

39. Malone's tweet was constitutionally protected activity. Specifically, Malone tweeted as a private citizen about a matter of public concern.

40. Defendants' decision to terminate Malone's employment was retaliatory and based entirely upon on his exercise of free speech, *i.e.* the tweet.

41. Defendants' actions have deprived Malone of and infringed upon his right to free speech as guaranteed by the First Amendment.

42. Defendants' actions have likely had and will continue to have a chilling effect on the exercise of free speech by other employees at UTC, as well as employees at other governmental entities.

43. Defendants' actions were intentional and reckless and callously indifferent to Malone's right to free speech as guaranteed by the First Amendment.

44. As a proximate result of Defendants' actions, Malone has suffered past and future economic damages in the form of lost income, and Malone has suffered mental/emotional distress.

45. Malone is entitled to the following from Defendants: an award of nominal damages; compensatory damages; reinstatement with backpay; punitive damages to deter future

violations of the First Amendment and to reverse the chilling effect of Defendants' action; and attorney fees, costs and expenses.

## COUNT II

### DUE PROCESS CLAUSE
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

46. Malone incorporates by reference herein, as fully as though set forth verbatim, the allegations set forth in the preceding numbered paragraphs, and he does further allege as follows.

47. Malone was informed by Coach Wright he must resign or be terminated because of the tweet. Coach Wright stated the tweet violated a "clear set of standards."

48. Malone has never seen the "clear set of standards" that he allegedly violated.

49. To the extent a "clear set of standards" exists, the standards are unconstitutional because they are so vague as to provide no basis for clear and consistent application.

50. To the extent a "clear set of standards" exists, the standards are also unconstitutional because they are susceptible to discrimination based upon viewpoint. They effectively suppress speech that Defendants arbitrarily deem "unacceptable", "totally inappropriate", "appalling", and "hateful, hurtful and untrue."

51. Defendants possess enforcement authority over UTC's policies, including the "clear set of standards", as they relate to Malone's employment. They are responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Malone's constitutional rights under the Fourteenth Amendment and 42 USC § 1983.

52. Malone is entitled to the following: a declaration that Defendants violated his federal constitutional rights; that the "clear set of standards" he allegedly violated are unconstitutionally vague and susceptible to discrimination based upon viewpoint; and attorney fees, costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Malone respectfully requests that the Court enter judgment against Defendants and provide him with the following relief:

A.  Nominal damages for Defendants' violation of his federal constitutional rights;

B.  Compensatory damages for Defendants' violation of his federal constitutional rights;

C.  Reinstatement with backpay;

D.  Punitive damages to deter Defendants from future violations of the First Amendment and to reverse the chilling effect of Defendants' actions;

E.  Attorney fees, costs and expenses pursuant to 42 USC § 1988; and

F.  Such other and further relief as the Court may deem just and proper.


DATED: April 27, 2021

Respectfully submitted,

By: /s/ Douglas A. Churdar
CHURDAR LAW FIRM
Douglas A. Churdar (Fed. No. 5220)
(subject to admission *pro hac vice*)
304 Pettigru Street
Greenville, SC 29601
Phone: (864) 233-0203
Fax: (864) 233-3020
Email: dachurdar@churdarlaw.com

By: /s/ Stephen S. Duggins
LAW OFFICE OF STEPHEN S. DUGGINS
Stephen S. Duggins (BPR 13222)
8052 Standifer Gap Road, Suite B
Chattanooga, TN 37421
Phone: (423) 635-7113
Fax: (423) 635-7114
Email: steve@stevedugginslaw.com